HAKARI v SKI BRULE, INC

Docket No. 204772. Submitted May 21, 1998, at Marquette. Decided June 19, 1998, at 9:00 A.M.

Diane Hakari brought an action in the Iron Circuit Court against Ski Brule, Inc., and an unidentified skier, alleging negligence in connection with injuries she sustained while skiing at Ski Brule's resort when she collided with the unidentified skier. The plaintiff sought leave to amend her complaint to allege that Ski Brule had and breached a duty under the Ski Area Safety Act and the common law to obtain from the unidentified skier information concerning his identity. The court, John D. Payant, J., denied leave to amend the complaint and subsequently granted summary disposition for Ski Brule, ruling that the claim against Ski Brule was precluded by the Ski Area Safety Act. The plaintiff appealed, challenging the denial of leave to amend her complaint.

The Court of Appeals *held*:

The trial court did not abuse its discretion in denying the plaintiff leave to amend her complaint inasmuch as amendment would be futile because neither the Ski Area Safety Act nor the common law imposes a duty on a ski area operator to ascertain the identity of a skier involved in accidental injury to another skier.

1. Section 23(1) of the Ski Area Safety Act, MCL 408.343(1); MSA 18.483(23)(1), expressly imposes a duty on a skier involved in an accident to identify himself to the ski patrol, the ski area operator, or law-enforcement or emergency personnel, but cannot be construed to impose a duty on a ski area operator to ascertain the identity of a skier involved in accidental injury to another skier. Such a construction would be inconsistent with legislative intent underlying the act to let skiers assume the obvious and necessary dangers of skiing.

2. Generally, under common law, an individual has no duty to protect another who is endangered by a third person's conduct. Where there is a duty to protect an individual from harm by a third person, that duty to exercise reasonable care arises from a special relationship between either the defendant and the victim or the defendant and the third party who caused the injury. Such a special relationship must be sufficiently strong to require a defendant to

take action to benefit the injured party. In this case, no special relationship existed between Ski Brule and the plaintiff that would give rise to a duty on the part of Ski Brule to render assistance to the plaintiff in the form of ascertaining the identity of the unidentified skier.

Affirmed.

NEGLIGENCE — SKI AREA OPERATORS — ASCERTAINING IDENTITIES OF SKIERS — SKI AREA SAFETY ACT.

Neither the Ski Area Safety Act nor the con. non law imposes a duty on a ski area operator to ascertain, for the benefit of an accidentally injured skier, the identity of any other skier involved in the accident; the failure of a ski area operator to ascertain the identity of a skier involved in accidental injury to another skier does not subject the operator to liability to the injured skier for negligence (MCL 408.343[1]; MSA 18.483[23][1]).

*Fisher, Omdahl & Lawrence* (by *Torger G. Omdahl* and *Geoffrey C. Lawrence*), for the plaintiff.

*Dean & O'Dea* (by *Timothy M. Dean*), for the defendant.

Before: MARKMAN, P.J., and GRIFFIN and WHITBECK, JJ.

GRIFFIN, J. Plaintiff appeals as of right from the trial court's order denying her motion to file a first amended complaint. We affirm.

On March 4, 1995, plaintiff was injured when she was struck from behind by another skier while skiing on a slope at defendant's ski resort. Plaintiff filed suit, alleging that defendant negligently adjusted boots and bindings that she purchased from its ski shop and, further, that defendant failed to supervise the actions of other skiers on the ski slope. The name of the other skier, identified only as defendant John Doe in plaintiff's original complaint, was thereafter ascertained to be John H. Jacques, although no further

information regarding this individual was available.[1] Plaintiff attempted to amend her original complaint to also allege that defendant negligently failed to take proper identification from Jacques, in violation of the Ski Area Safety Act of 1962, MCL 408.321 *et seq.*; MSA 18.483(1) *et seq.*, and the common law, thus allegedly denying her the opportunity to trace this person and bring suit against him. The trial court denied plaintiff's motion to amend her complaint as futile, concluding that there existed neither a statutory nor a common-law duty on the part of defendant to obtain and provide to plaintiff further information concerning the identity of the other skier. The trial court subsequently granted summary disposition in favor of defendant pursuant to MCR 2.116(C)(8) and (10), finding that there existed no genuine issue of material fact with regard to the claims set forth in plaintiff's original complaint and that plaintiff's cause of action was precluded by the Ski Area Safety Act. On appeal, plaintiff challenges only the denial of her motion to amend the complaint.

---

[1] Immediately following the accident, the other skier identified himself to ski patrol personnel as John H. Jacques" but gave no other information regarding his identity, such as address, social security number, driver's license number, or phone number. There were no other witnesses to the accident and no other information corroborating the identity of Jacques. Jacques gave a handwritten account of the accident to the ski patrol, which in its totality consisted of the following:

Diane was in front of me to my right and made a sudden turn to the left. She was moving slower than most skiers on that hill. We collided, my right side to her left side as I was falling to try to avoid her.

This statement was produced during the course of discovery, after the filing of plaintiff's original complaint.

I

A trial court should freely grant leave to amend pleadings if justice so requires. MCR 2.118(A)(2); *Weymers v Khera*, 454 Mich 639, 654; 563 NW2d 647 (1997). However, leave to amend a complaint may be denied for particularized reasons, such as undue delay, bad faith, or dilatory motive on the movant's part, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or where amendment would be futile. *Jenks v Brown*, 219 Mich App 415, 420; 557 NW2d 114 (1996). "An amendment is futile where, ignoring the substantive merits of the claim, it is legally insufficient on its face." *Gonyea v Motor Parts Federal Credit Union*, 192 Mich App 74, 78; 480 NW2d 297 (1991). This Court reviews grants and denials of motions for leave to amend pleadings for an abuse of discretion. *Weymers, supra* at 658; *Jenks, supra* at 420.

In the present case, plaintiff moved to amend her original complaint to state a claim of negligence against defendant for its failure to procure adequate information regarding the identity of the other skier, John Jacques, involved in the accident. Plaintiff sought to allege that pursuant to the common law and the Ski Area Safety Act, a ski hill operator has an affirmative duty to procure specific and complete identification from any skier involved in an accident. However, we conclude that the existence of such a duty is supported neither by case law nor by a reasonable construction of the statute; hence, the trial court properly denied the amendment as futile.

A fundamental rule of statutory construction is to ascertain and effectuate the intent of the Legislature

in enacting the provision. *Jenks, supra* at 418; *Barr v Mt Brighton Inc*, 215 Mich App 512, 517; 546 NW2d 273 (1996). Statutory language should be construed reasonably with the purpose of the statute in mind. *Id.* The words and phrases in a statute are to be given their plain and ordinary meaning. *Panich v Iron Wood Products Corp*, 179 Mich App 136, 141; 445 NW2d 795 (1989). A statute is not open to construction by the courts unless the language used in the statute is ambiguous or where reasonable minds could differ. *Grieb v Alpine Valley Ski Area, Inc*, 155 Mich App 484, 486; 400 NW2d 653 (1986).

The Ski Area Safety Act was enacted to provide for certain presumptions relative to liability for injury or damage sustained by skiers and to clearly delineate the rights and responsibilities of skiers and ski area operators. *Barr, supra* at 515; *Schmitz v Cannonsburg Skiing Corp*, 170 Mich App 692, 693-694; 428 NW2d 742 (1988). As this Court noted in *Grieb, supra* at 488-489:

> The Legislature perceived a problem with respect to the inherent dangers of skiing and the need for promoting safety, coupled with the uncertain and potentially enormous ski area operators' liability. Given these competing interests, the Legislature decided to establish rules in order to regulate the ski operators and to set out ski operators' and skiers' responsibilities in the area of safety. MCL 408.340 *et seq.*; MSA 18.483(20) *et seq.* As part of this reform, the Legislature has decided that all skiers assume the obvious and necessary dangers of skiing. This is a rational solution for limiting ski area operators' liability and promoting safety.

The portion of the Ski Area Safety Act that, according to plaintiff, arguably gives rise to a ski operator's

affirmative duty to ascertain the identity of a skier
involved in an accident reads as follows:

> *A skier involved in an accident causing an injury to
> another person shall to the extent that he or she is reasona-
> bly able to do so immediately notify the ski patrol or the
> operator, or law enforcement or emergency personnel, and
> shall clearly identify himself or herself.* A skier who
> wilfully fails to give identification after involvement in a ski-
> ing accident with another person, or a skier who is reasona-
> bly able to do so who fails to notify the proper authorities
> or to obtain assistance when the skier knows that another
> person involved in the accident is in need of medical or
> other assistance, is guilty of a misdemeanor, punishable by
> imprisonment for not more than 30 days, or a fine of not
> more than $100.00, or both. [MCL 408.343(1); MSA
> 18.483(23)(1) (emphasis added).]

The language of the statute is neither ambiguous
nor unclear. As the statute is written, it is the *skier's*
duty to identify himself to the ski patrol, operator,
law enforcement, or emergency personnel. Although
this section does identify the operator as one of the
persons to whom the parties to an injury must
"clearly identify" themselves, we will not, by implica-
tion, read into the statute an affirmative duty on the
part of the ski area operator to ascertain, verify, or
record the identity of the skier involved in an acci-
dent. This Court, albeit in a different context,[2] has
refused to create a statutory duty where no such duty
could be gleaned from the language or intent of the
statute. *Panich, supra.* In so doing, we noted:

---

[2] In *Panich, supra,* the plaintiff sought to create a duty of an employer
pursuant to the Worker's Disability Compensation Act, MCL 418.827(1),
(5); MSA 17.237(827)(1), (5), to preserve evidence necessary to aid the
plaintiff's third-party tort action.

> The role of the judiciary is to construe statutes as intended by the Legislature, not to rewrite them. No fair reading of the statute lends support to plaintiff's position that the Legislature intended to impose such a duty on employers. [*Id.* at 142].

We adhere to this principle in the instant case. Indeed, the imposition of a duty upon the skier, alone, to "clearly identify" himself is consistent with the distribution of risks and responsibilities set forth in other portions of the Ski Area Safety Act. MCL 408.342(2); MSA 18.483(22)(2) provides in pertinent part:

> Each person who participates in the sport of skiing accepts the dangers that inhere in that sport insofar as the dangers are obvious and necessary. Those dangers include, but are not limited to . . . *collisions* . . . *with other skiers* . . . . [Emphasis added.]

This statutory section "clearly and unambiguously provides that an injury resulting from a collision with another skier is an obvious and necessary danger *assumed by skiers.*" *Grieb, supra* at 486 (emphasis added). See also *Barr, supra* at 517. In *Schmitz, supra* at 696, this Court further stated that "it is logical to construe this section of the statute [MCL 408.342(2); MSA 18.483(22)(2) ] as an assumption of risk clause that renders the reasonableness of the skiers' or the ski area operator's behavior irrelevant." It would be logically inconsistent, then, to create by implication an affirmative duty on the part of the ski area operator to properly identify any skiers involved in an accident stemming from a collision when the operator is otherwise statutorily absolved of liability under those circumstances.

We conclude that the language and intent of MCL 408.343(1); MSA 18.483(23)(1) is not amenable to the expansive statutory construction proposed by plaintiff. The trial court therefore did not abuse its discretion in denying plaintiff's motion to amend her complaint to set forth a claim pursuant to that section of the Ski Area Safety Act.

II

Plaintiff also sought to amend her complaint to allege that defendant owed her a common-law duty to obtain adequate identification from John Jacques after the accident. However, we find no basis for such a cause of action and therefore conclude that the trial court properly denied plaintiff's motion to amend in this regard.

The issue of duty is a question of law for the court to decide. *Moning v Alfono*, 400 Mich 425, 437; 254 NW2d 759 (1977); *Panich, supra* at 139. The concept of duty encompasses whether the defendant owes the plaintiff any obligation to avoid negligent conduct. *Moning, supra* at 437; *Jenks, supra* at 417. In deciding whether a duty should be imposed, the court must look at several factors, including the relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented. *Murdock v Higgins*, 454 Mich 46, 54; 559 NW2d 639 (1997); *Buczkowski v McKay*, 441 Mich 96, 100; 490 NW2d 330 (1992). It is axiomatic that, where no duty exists, there can be no actionable negligence. *Schenk v Mercury Marine Div, Lowe Industries*, 155 Mich App 20, 25; 399 NW2d 428 (1986). It is likewise well established that

[g]enerally, an individual has no duty to protect another who is endangered by a third person's conduct. Where there is a duty to protect an individual from a harm by a third person, that duty to exercise reasonable care arises from a "special relationship" either between the defendant and the victim, or the defendant and the third party who caused the injury. . . . Such a special relationship must be sufficiently strong to require a defendant to take action to benefit the injured party. [*Murdock, supra* at 54.]

In the instant case, plaintiff was physically injured by a collision with a third person, not by the conduct of defendant. No "special relationship"[3] existed between defendant and plaintiff that would give rise to a duty on the part of defendant to render assistance to plaintiff in the form of procuring information concerning the identity of the other skier. As the trial court properly noted, the relationship between defendant and plaintiff was merely contractual. Thus, there was no "special relationship" that required defendant to act affirmatively in the manner alleged by plaintiff. *Murdock, supra; Schenk, supra.* We hold that the trial court properly exercised its discretion in disallowing, as futile, plaintiff's proposed amendments of her complaint. *Gonyea, supra.*

Affirmed.

---

[3] Some generally recognized "special relationships" include invitor-invitee, common carrier-passenger, innkeeper-guest, landlord-tenant, employer-employee, and doctor-patient/psychiatrist-patient. *Murdock, supra* at 55, n 11.